Filed 12/27/23  Calexico Unified School Dist. v. City of Calexico CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CALEXICO UNIFIED SCHOOL DISTRICT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF CALEXICO,<br><br>    Defendant and Respondent. | D080686<br><br><br>(Super. Ct. No. ECU001685) |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Affirmed.

Dannis Woliver Kelley, Samuel R. Santana, Karina K. Samaniego and Luke L. Punnakanta for Plaintiff and Appellant.

Tao Rossini and Barry Nutovic for Coalition of Adequate School Housing as Amicus Curiae on behalf of Plaintiff and Appellant.

Best Best & Krieger, Carlos L. Campos and Matthew L. Green for Defendant and Respondent.

INTRODUCTION

Between 2017 and 2020, the City of Calexico (the City) issued over 200 building permits before obtaining certification that school impact fees had been paid to the Calexico Unified School District (the District), as required by Education Code[1] section 17620, subdivision (b) (section 17620(b)). The District contends this means that a large number of developers and property owners never paid fees they owed the District. It estimates Calexico's public schools were deprived of nearly $1 million in fees that were critical to its ability to provide facilities for new students brought by new development.

The central question presented by this appeal is whether the District may recover those unpaid school impact fees *from the City* under Government Code section 815.6, under which a public entity may be held liable for an "injury" proximately resulting from its failure to discharge a mandatory duty. We conclude the answer is no. Under *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 968 (*Aubry*), an actionable injury must be to the kind of interest that has been protected in the courts " '*in actions between private persons*.' " Because school impact fees are an entirely government creation, no private plaintiff could bring a suit against a private defendant to recover such unpaid fees. Although we recognize unpaid school impact fees harm school districts, and ultimately public-school students, we are constrained by *Aubry* to hold the City cannot be held liable for this injury under Government Code section 815.6. We affirm the trial court's judgment in favor of the City as to the District's petition for writ of mandate and complaint for damages.

---

[1] All further undesignated statutory references are to the Education Code.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Overview of School Impact Fees*

We begin with a discussion of the statutory framework that governs school impact fees to provide context.

The current system of financing public school facilities in California is accomplished through statewide bonds, local bonds, and school impact fees, with "all playing an important role in school facility finance." (Eric J. Brunner and Jeffrey M. Vincent, Financing School Facilities in California: A 10-Year Perspective (Sept. 2018), p. iii.) Historically, however, school districts " 'financed the construction and maintenance of school facilities mainly through the issuance of local bonds repaid from real property taxes.' " (*Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 916 (*Grupe*), quoting *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 881.)

In the early 1970s, resistance to rising property taxes made it more difficult for local governments to obtain voter approval of bond issues to finance school facilities. (*Grupe*, *supra*, 4 Cal.4th at p. 916.) At the same time, " '[a] wave of residential development' " contributed to the funding problem by " 'causing serious overcrowding in local schools.' " (*Ibid.*) To " 'keep pace with the continuing influx of new students, local governments began the practice of imposing [school impact] fees on developers to cover the costs of new school facilities made necessary by the new housing.' " (*Ibid.*)

Although the practice was generally deemed a valid exercise of the police power under California's Constitution, the Legislature enacted the School Facilities Act in 1977 to grant cities and counties the specific authority to levy school impact fees. (Stats. 1977, ch. 955, § 1, pp. 2902–2905; *Grupe*,

3

*supra*, 4 Cal.4th at p. 916.)  In 1986, the School Facilities Act was " 'substantially revised and expanded,' " in part, to expressly authorize school districts themselves, rather than city councils or county boards of supervisors, to impose such fees.  (*Grupe*, at p. 917.)

The authority of school districts to levy school impact fees on new development is codified at section 17620, subdivision (a), which provides: "The governing board of any school district is authorized to levy, a fee . . . against any construction within the boundaries of the district, for the purpose of funding the construction or reconstruction of school facilities." (§ 17620, subd. (a).)  The fee may be imposed against "new commercial and industrial construction"; "new residential construction"; "other residential construction" that increases "assessable space" by more than 500 square feet; and the "location, installation, or occupancy of manufactured homes and mobilehomes."  (§ 17620, subd. (a)(1)(A)–(D).)

The amount of the fee that may be imposed is limited by Government Code sections 65995 through 65998.  (Ed. Code, § 17620, subd. (a).)  These statutes create three distinct tiers of school impact fees.

Level 1 fees are the statutory maximum that may be charged per square foot; they are adjusted biannually for inflation by the State Allocation Board.[2]  (Gov. Code, § 65995, subd. (b)(1)–(3).)  Level 2 fees, which can be charged only on residential development, are an alternative fee per square

---

[2]     Currently, $4.79 per square foot of assessable space may be imposed on residential construction and $0.78 per square foot on any commercial or industrial construction.  (California Department of General Services, Annual Adjustment to SFP Grants and Developer Fee History <https://www.dgs.ca.gov/OPSC/Resources/Page-Content/Office-of-Public-School-Construction-Resources-List-Folder/Annual-Adjustment-to-SFP-Grants-and-Developer-Fee-History> [as of Dec. 27, 2023].)

4

foot that may be imposed by a school district that needs to house additional students. (*Id.*, § 65995.5, subds. (a), (b)(2).) To impose Level 2 fees, school districts must conduct and adopt a "school facility needs analysis" (*id.*, § 65995.5, subd. (b)(2)) "to determine the need for new school facilities for unhoused[3] pupils that are attributable to projected enrollment growth from the development of new residential units over the next five years" (*id.*, § 65995.6, subd. (a)). School districts eligible to impose Level 2 fees can impose higher Level 3 fees if the State Allocation Board determines it "is no longer approving apportionments for new construction . . . due to a lack of funds available." (*Id.*, § 65995.7, subds. (a) & (b).)

To adopt a school impact fee, school districts must "determine how there is a reasonable relationship between the amount of the fee and the cost of the public facility . . . attributable to the development on which the fee is imposed." (Gov. Code, § 66001, subd. (b) [made applicable by Ed. Code, § 17621, subd. (a)].) And they must impose such fees by resolution and only after a public hearing. (Ed. Code, § 17621, subd. (a); Gov. Code, §§ 66004, 66018, subd. (a).)

The collection of school impact fees from developers or property owners may be done in one of two ways. The school district and the appropriate city or county may enter into a contractual agreement by which the city or county collects the fees on the school district's behalf. (§ 17620, subd. (a)(4).) If there is no agreement, the school district collects the fees. But to ensure payment is made to the school district, the city or county that oversees the

---

3    The District explains an unhoused student is a student who does not have a seat within District facilities, meaning the student may learn in a classroom with overloaded capacity, or in nontraditional facilities like portable classroom trailers.

5

development must obtain the school district's certification that the school district has been paid or is not owed fees before issuing any building permit. (§ 17620, subd. (b).)

This certification requirement in turn requires the school district to notify "each city and each county in which the district is situated" whenever it adopts or increases a school impact fee. (§ 17621, subd. (c).) Section 17621, subdivision (c) (section 17621(c)), specifies that the school district's notice "shall" include "a copy of the resolution" adopting or increasing the school impact fee, "accompanied by all relevant supporting documentation and a map clearly indicating the boundaries of the area subject to the fee." Upon the required notification, the affected city or county "shall not issue a building permit for any construction absent certification by the appropriate school district" that the developer or property owner has paid or does not owe school impact fees to the school district. (§ 17620, subds. (b) & (d).)

II.

*Unpaid School Impact Fees in Calexico*

The District serves Calexico with 11 schools and approximately 8,547 students.[4] According to its 2021 school facility needs analysis, the District estimated the cost to provide school facilities for each of its students in grades K–6, 7–8, and 9–12 was $34,946, $38,590, $38,682, respectively. In that year, the District had 470 unhoused students within its facilities and "no funds dedicated to school facilities necessitated by future construction and development."

---

[4] Calexico Unified School District, Points of Pride <https://www.cusdk12.org/index.html> [as of Dec. 27, 2023].

6

The District does not have an agreement for the City to administer the collection of school impact fees on the District's behalf. Thus the City would have been required to obtain certification from the District that it was paid or was not owed fees on a particular development project before the City could issue a building permit. (See Section I, *infra*.) In the fall of 2020, the District learned that between 2017 and 2020, the City had issued a total of 256 building permits (33 in 2017, 58 in 2018, 100 in 2019, and 65 in 2020). The City, however, only received certification that fees were paid to the District for 43 of those building permits (3 in 2017, 13 in 2018, 15 in 2019, and 12 in 2020). The District contends this means that, during those years, the City issued 213 building permits before the District received payment of school impact fees from the property owner or developer, or determined that no fees were owed.

This lawsuit followed. The District sued the City to recover what it estimates to be approximately $1 million of unpaid school impact fees. In its operative petition for writ of mandate and complaint for damages, the District asserted three causes of action: (1) Under Code of Civil Procedure section 1085, the District sought a writ of mandate directing the City to comply with section 17620(b), and to pay the District the unpaid school impact fees as retrospective relief. (2) The District asserted the City breached its mandatory duty under section 17620(b), and sought damages under Government Code section 815.6. (3) The District sought declaratory relief under Code of Civil Procedure section 1060.

The City answered and asserted numerous affirmative defenses. In particular, the City asserted the District's petition was barred by section 17620, subdivision (d), because the District failed to comply with the notice requirements under section 17621(c). Specifically, the District had not

7

provided the City with a copy of the resolutions adopting or increasing school impact fees, " 'accompanied by all relevant supporting documentation and a map clearly indicating the boundaries of the area subject to the fee.' "  As a result, the City argued, it was under no mandatory duty imposed by section 17620(b).

The City also filed a cross-complaint for equitable indemnity and contribution from 330 property owners and developers that had failed to pay school impact fees to the District.[5]  Finding "the addition of these numerous parties may be unnecessary following a trial on the issue of liability," the District and the City agreed to bifurcate the issues of liability and damages. They tried first the issue of liability, "on the papers [and] without [any] live testimony."

The trial court ruled in favor of the City on liability.  The court found the District's cause of action under Government Code section 815.6 failed for two reasons:  (1) The injury asserted by the District—"unpaid developer fees"—was not the kind of injury that would allow recovery of damages against a public entity under Government Code section 815.6.  (2) The City had no mandatory duty under section 17620(b) to obtain certification from the District before issuing any building permit because the District failed to "provide [the City with] all of the statutorily required documents and information" under section 17621(c).  Last, the court rejected the District's request for writ of mandate as moot, finding that "the City is currently in compliance with the requirements of the Education Code and has been in compliance since 2020."  The court did not address the District's third cause

---

[5]     The City originally sued Roes 1 through 400.  It subsequently amended its cross-complaint to name 330 individual "building permit applicants."

8

of action for declaratory relief, but it denied the District's petition in its entirety.

DISCUSSION

I.

*Second Cause of Action for Damages Under Government Code Section 815.6*

The District appeals, asserting the trial court erroneously ruled in favor of the City on all three causes of action. We begin our discussion with the District's second cause of action for damages under Government Code section 815.6.

A.    *Mandatory Duty Liability Under Government Code Section 815.6*

Except as otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity[.]" (Gov. Code, § 815, subd. (a).) Government Code section 815.6 is one of the statutory exceptions to this rule of governmental immunity. It provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Gov. Code, § 815.6.) An "enactment" is defined as "a constitutional provision, statute, charter provision, ordinance or regulation." (Gov. Code, § 810.6.)

Application of Government Code " 'section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have

9

been under an obligation to perform a function if the function itself involves the exercise of discretion.' " (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 (*Guzman*).)  Courts construe this requirement "rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.' "  (*Ibid.*; see *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1240 (*Clausing*) ["If rules and guidelines for the implementation of an alleged mandatory duty are not set forth in an otherwise prohibitory statute, it cannot create a mandatory duty."].)

"[E]qually important, [Government Code] section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered.  The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' "  (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499 (*Haggis*).)  Last, the breach of the duty must have been a proximate cause of the plaintiff's injury. (*Guzman*, *supra*, 46 Cal.4th at p. 898.)  "The question of whether an enactment is intended to impose a mandatory duty on a public entity to protect against a particular kind of injury is a question of law" (*Clausing*, *supra*, 221 Cal.App.3d at p. 1239), which we review de novo (*Haggis*, at p. 499).

B.  *Section 17620(b) Imposes a Mandatory Duty upon the City to Ensure the District Received Payment of School Impact Fees Before Issuing Building Permits*

The parties agree section 17620(b) imposes a mandatory duty upon the City to obtain certification that the District has been paid or is not owed school impact fees before issuing a building permit; and that duty is contingent on the District providing the City with "notification" of the fee adoption or increase "in accordance with" section 17621(c) (§ 17620, subd.

10

(d)), which specifies that "the school district shall transmit a copy of the resolution to each city and each county in which the district is situated, accompanied by all relevant supporting documentation and a map clearly indicating the boundaries of the area subject to the fee[.]"  Where they disagree is whether the District can satisfy section 17621(c)'s notice requirements with substantial or strict compliance.

The answer depends on whether section 17621(c)'s notice requirements have "mandatory" or "directory" effect.  (See *Downtown Palo Alto Com. for Fair Assessment v. City Council* (1986) 180 Cal.App.3d 384, 394 (*Palo Alto*).)  It is important to note the distinction between mandatory and directory effect differs from the question of whether a duty is mandatory under Government Code section 815.6.  (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 (*Morris*) [" 'mandatory duty' terminology of [Government Code] section 815.6 [is] entirely distinct and unrelated" to the "legal doctrine pertaining to 'directory' or 'mandatory' provisions"].)  As used in Government Code section 815.6, "the term 'mandatory' refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses.  By contrast, the 'directory' or 'mandatory' designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates."  (*Morris*, at p. 908.)

Although both directory and mandatory provisions contain obligatory requirements, "[i]t is only where statutory requirements are accorded 'mandatory' rather than 'directory' effect that failure to comply with a particular step" will invalidate the governmental action to which the

11

procedural requirement relates. (*Palo Alto*, *supra*, 180 Cal.App.3d at pp. 394–395; *Morris*, *supra*, 18 Cal.3d at pp. 908–909.) In other words, strict compliance with procedural requirements is required for provisions with mandatory effect, whereas substantial compliance will suffice for provisions with directory effect. (*Palo Alto*, at pp. 394–395; *Morris*, at pp. 908–909.)

As our high court has explained, "there is no simple, mechanical test for determining whether a provision should be given 'directory' or 'mandatory' effect. 'In order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose.' " (*Morris*, *supra*, 18 Cal.3d at pp. 909–910.) "The paramount consideration is the objective of the statute" (*Palo Alto*, *supra*, 180 Cal.App.3d at p. 395), and "[u]nless the intent of the statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test" (*id.* at pp. 394–395). This is a question we review de novo. (*Ibid.*; *Warmington Old Town Associates v. Tustin Unified School Dist.* (2002) 101 Cal.App.4th 840, 849 [reviewing statutory interpretation de novo].)

The parties offer differing views of what the Legislature intended with the notice requirements of section 17621(c). The District asserts the notice requirements were meant "to provide planning agencies with notice of school districts' fee rates." It further contends this notice provision "serves more of a

12

purpose" where a city or county and a non-unified school district have taken the optional step under section 17620, subdivision (a)(4), of entering into an agreement for the city or county to collect school impact fees on the school district's behalf. "In that case, the city [or county] would need to know the rates a specific district is charging because the city [or county] is the party analyzing the permit and calculating the fees." But where, as here, there is no such agreement, the District contends the City need not even be made aware of the applicable fee rates. The District points to the deposition testimony of the City's person most knowledgeable, who testified "[t]he rate of what's being charged should not impact [the City's] compliance" with section 17620(b) to withhold issuance of building permits until it obtains certification that fees have been paid or are not owed.

The District further argues that, despite the notice provision requiring transmission of a boundary map showing the area subject to the school impact fee, a map serves no purpose in a unified district such as Calexico's where the District is the only school district within the City. Thus, in the District's view, transmitting just enough information to allow the city and county to know whether they need to receive certification of payment of school impact fees before issuing a particular building permit satisfies the Legislature's objective in enacting section 17621(c)'s notice requirements. They therefore have directory effect and may be satisfied with substantial compliance.

The City, on the other hand, contends section 17621(c) "is not a mere notice provision." Rather, the notice requirements are meant to provide cities and counties with the information necessary to assess whether to challenge the adoption of a new or increased school impact fee. Without the resolution and fees study, the City argues it cannot make that assessment. The City

13

states it has only a 120-day period to challenge new school impact fees under Government Code section 66022, subdivision (a), and "coupled with the significant impact that developer fees may have on cities and counties, it makes sense that the Legislature placed the onus on school districts to provide cities and counties with the materials justifying the fees." In the City's view, school districts must strictly comply with the notice requirements.

The District has the better argument. We disagree with the City that the Legislature intended for the notice requirements to serve the objective of providing information necessary for cities and counties to assess whether to challenge new school impact fees. The challenge provision identified by the City—Government Code section 66022—does not apply to school impact fees.[6] Government Code section 66022 is part of the Mitigation Fee Act, which was passed by the Legislature " ' "in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects." ' " (*Barratt American Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 691.) The Mitigation Fee Act provides specific ways for developers to challenge development fees. But subdivision (c) of Government Code section 66022 expressly states: "This section shall apply only to fees, capacity charges, and service charges described in and subject to Sections 66013, 66014, and 66016." Government Code section 66013 covers water and sewer connection fees. Government

---

[6] We note that amici curiae in *Western/California, Ltd. v. Dry Creek Joint Elementary School Dist.* (1996) 50 Cal.App.4th 1461, 1475, footnote 12 (*Dry Creek*) argued that Government Code section 66022 does not apply to school impact fees. But the court did not decide the issue and instead "assume[d] for the sake of argument that [Government Code] section 66022 applies to the type of developer fees at issue." (*Ibid.*)

Code section 66014 covers zoning and permit fees. Neither applies to school impact fees. (*Barratt American Inc.*, at p. 691 [noting these fees or charges do not relate to a development project].) Government Code section 66016 is similarly inapplicable. It applies "only to fees and charges" in a number of sections that do not cover school impact fees.[7] (Gov. Code, § 66016, subd. (d).) Contrary to the City's argument, Government Code section 66022 does not authorize cities and counties to challenge school impact fees.[8]

The City identifies no other provision under which it could affirmatively challenge a school impact fee imposed by the District. Nor has

---

[7] Those sections include Government Code sections 51287 (recovery of costs from cancellation of land contracts), 56383 (fees and service charges imposed by local agency formation commissions), 65104 (fees to support a planning agency), 65456 (land use plan fees), 65584.1 (fees for distributing regional housing needs), 65863.7 (fees for closing mobile home parks), 65909.5 (fees for use permits and zone variances), 66013 (water and sewer connection fees), 66014 (zoning and permit fees), and 66451.2 (fees for processing parcel maps); Health and Safety Code sections 17951 (building permit and enforcement fees), 19132.3 (building permit application fees), and 19852 (building record fees); Public Resources Code section 41901 (waste management fees); and Public Utilities Code section 21671.5 (airport land use commission fees).

[8] The precursor to Government Code section 66022 enacted in 1982 contained essentially the same language as current Government Code section 66022, except that it did not contain the restriction in current subdivision (c) regarding which fees may be challenged. (Compare Stats. 1982, ch. 289, § 5, pp. 929–930, with Gov. Code, § 66022.) The first version of the restriction in current subdivision (c) was not enacted until 1990. (Stats. 1990, ch. 1572, § 22, pp. 7505–7506.) Thus there was no such restriction when the Legislature enacted the school impact fee notice requirements in 1989. (See Stats. 1989, ch. 1209, §§ 19–20, pp. 4693–4694.) To the extent cities and counties were able to challenge school impact fees under the precursor to Government Code section 66022, the current statute forecloses that possibility.

15

our research revealed any such provision. Education Code section 17621, subdivision (d), allows "[a]ny party on whom" a school impact fee "has been *directly* imposed" to "protest the establishment or imposition" of that school impact fee under Government Code section 66020. (Italics added.) But cities and counties issuing building permits cannot challenge school impact fees under this provision, as such fees are not "directly imposed" on them, but rather on developers and property owners. (Ed. Code, § 17621, subd. (d).) Moreover, we have not succeeded in locating any case (published or unpublished) in which a city or county has challenged a school district's imposition of a school impact fee.

We are thus unpersuaded by the City's contention that the objective of section 17621(c)'s notice requirements is to provide *cities and counties* with information necessary to assess whether to challenge school impact fees. It makes more sense, as the District argues, that the objective of section 17621(c)'s notice requirements is to inform cities and counties whether they need to receive certification of payment of school impact fees before issuing building permits. This objective finds support in the legislative history of the 1986 bill that revised and expanded the School Facilities Act to give school districts direct authority to levy school impact fees. As our high court noted in *Grupe*, *supra*, 4 Cal.4th at pages 917–918: "Dispelling any doubt as to its intent, the Legislature declared in the [enacting] bill that in many parts of California real property development was causing serious overcrowding in schools that traditional public financing was inadequate to relieve, and '[f]or these reasons, a comprehensive school facilities finance program based upon *a partnership* of state and local governments and the private sector is required to ensure the availability of school facilities to serve the population growth generated by new development.' (Stats. 1986, ch. 887, § 7, subd. (d),

16

p. 3080.)" (Italics added.) That partnership is served by imposing a gatekeeping role on cities and counties to ensure school impact fees are paid to school districts through their certification obligations.

The structure of sections 17620 and 17621 supports the objective advanced by the District. In isolation, section 17621(c) has no connection to the issuance of building permits. It only requires school districts to provide notice of adopted or increased school impact fees. (§ 17621, subd. (c).) However, as we have already explained, section 17620, subdivision (d), makes the duty of cities and counties under section 17620(b) contingent upon notice under section 17621(c). This indicates the Legislature considered the required notice to be necessary for cities and counties to perform their duty under section 17620(b). Common sense explains this necessity: if a city or county does not know a school district has adopted or increased school impact fees, it cannot know whether to condition the issuance of building permits on the receipt of certification that such fees have been paid or are not owed.

We conclude section 17621(c)'s notice requirements are intended to inform cities and counties whether they need to obtain certification from school districts that school impact fees have been paid, or are not owed, before issuing building permits. Because the objective of the notice requirements may be achieved without the exact transmission of information specified in section 17621(c), we conclude they have directory effect and substantial compliance is the governing test. (*Palo Alto, supra*, at 180 Cal.App.3d at p. 395.)

For example, "a map clearly indicating the boundaries of the area subject to the [school impact] fee" does not provide any necessary information in a case like the present one, where the City only has a single school district. (§ 17621, subd. (c).) In addition, although section 17621(c) requires

17

transmission of a copy of the adopting resolution, a document providing the relevant information from the resolution would deviate from the notice requirements only in form, without hindering their objective.  Such relevant information may include the effective date of the school impact fees and the rates imposed—in other words, whatever is necessary for the city or county to determine whether it must receive certification of payment of school impact fees before issuing a building permit.  The exact rates imposed may also not even be relevant, except where the city or county has agreed to help the school district collect the school impact fees under section 17620, subdivision (a)(4).  Transmission of the relevant information in a letter or some other document, rather than the resolution itself, does not undermine the objective of the notice requirements.

The legislative history supports our conclusion.  A report by the Assembly Committee on Education on the bill that enacted the precursor to section 17621(c) stated that the notice provision "[r]equires districts, upon adoption of fees, to notify the appropriate city or county and to provide maps and supporting documentation, *as necessary*."  (Assem. Com. on Education, Rep. on Assem. Bill No. 181 (1988–1989 Reg. Sess.) Feb. 7, 1989, p. 5, italics added.)  A later report on the same bill similarly stated the notice provision requires school districts "to provide *any necessary* maps and supporting documentation."  (Concurrence in Sen. Amendments, Rep. on Assem Bill No. 181 (1988–1989 Reg. Sess.) as amended Sept. 13, 1989, p. 6, italics added.)  The "necessary" qualifier in each of these descriptions of the notice provision, while not included in the statutory text, indicates the Legislature did not intend for the notice requirements to be strictly applied.

Last, we find *Dry Creek* to be persuasive authority that section 17621(c)'s notice requirements have directory effect.  In *Dry Creek*, a group of

18

developers sought refunds of school impact fees in a mandamus action under Code of Civil Procedure section 1085. (*Dry Creek, supra,* 50 Cal.App.4th at pp. 1467–1468.) They argued the fees exceeded a statutory restriction on development fees and requirements when added to the existing Mello-Roos taxes. The trial court agreed and directed issuance of a peremptory writ of mandate commanding the school district to refund the fees paid by the developers. (*Id.* at p. 1468.) The school district appealed. The Court of Appeal reversed the judgment, concluding the developers were not entitled to a refund because Mello-Roos taxes are not a factor in the statutory cap on school impact fees and requirements. (*Id.* at pp. 1468–1469.) These issues, of course, are not relevant to this appeal.

Relevant here, the developers filed a protective cross-appeal, asserting the judgment may be affirmed on the alternative ground the trial court erred in rejecting their claim that the school district was prohibited from collecting school impact fees because it had failed to give appropriate notice to the county, as required by the precursor to section 17621(c). (*Dry Creek, supra,* 50 Cal.App.4th at pp. 1468–1469, 1497.) Former Government Code section 53080.1, subdivision (c), the precursor to section 17621(c), also required the school district to transmit a copy of the resolution, supporting documentation, and a boundary map to the county.[9] (*Dry Creek,* at p. 1497.) And like here, the school district "merely informed" the county of its decision adopting the fee "in correspondence stating the documents were available upon request," but it had not transmitted the resolution, supporting documentation, or boundary map. (*Ibid.*) The developers argued the notice requirements were

---

[9]    Education Code section 17621 replaced Government Code section 53080.1. (Stats. 1996, ch. 277, §§ 3, 8, pp. 2182–2184, 2219.)

19

"intended for the protection of citizens" and should be accorded mandatory, not directory, effect, and thus the school district's failure to strictly comply with the provision invalidated the imposition of fees. (*Id.* at p. 1498.)

That argument was rejected by the *Dry Creek* court. (*Dry Creek*, *supra*, 50 Cal.App.4th at pp. 1469, 1491.) The court explained that "provisions enacted to secure the orderly conduct of business (as opposed to provisions enacted for the benefit of the individual) are directory." (*Id.* at p. 1499 [citing *Ryan v. Byram* (1935) 4 Cal.2d 596, 603].) Construing Government Code section 53080.1, the court found that "the only effect of noncompliance [with the notice requirements] indicated in the statutes is that the county may be excused from any obligations regarding the fee," namely the requirement that the county receive certification of fee payment before issuing a building permit. (*Dry Creek*, at p. 1499.) Based on this, the court concluded the notice requirements were not designed to benefit individuals, such as the developers, and instead they "secure[ ] the orderly conduct of business." (*Ibid.*) This gave them directory effect.

As the District acknowledges, the issue in *Dry Creek* (whether a school district's failure to comply with the notice requirements excused *developers* from having to pay school impact fees) is not the exact issue here (whether a school district's failure to comply with the notice requirements excuses a *city* from having to ensure payment of school impact fees before issuing building permits). Still, the underlying question—whether the notice requirements have mandatory or directory effect—is the same. We see no reason, and the

City provides none,[10] why the same procedural requirements would be afforded directory effect in one setting but mandatory effect in another.

Because we conclude section 17621(c) has directory effect, substantial compliance with its notice requirements is the governing test. We next turn to whether the District did substantially comply with the notice requirements necessary to trigger the City's mandatory duty under section 17620(b). We conclude it did.

"Substantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute. But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression . . . should not be given the stature of noncompliance[.]" (*Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29.) In other words, "notice must promote and satisfy the objectives of the law" to qualify as substantial compliance. (*Palo Alto*, *supra*, 180 Cal.App.3d at p. 396.) Substantial compliance is a question of law that we review de novo, but any underlying factual disputes must be resolved by a fact finder. (*Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 706.)

Consistent with the objective of section 17621(c), substantial compliance requires notice that informs the city and county whether they need to receive certification of payment of school impact fees before issuing building permits. Based on the undisputed facts in this case, the District substantially complied. The record on appeal includes five communications from the District to the City regarding adopted or modified school impact fees

---

10    Indeed, the City does not discuss *Dry Creek* in its respondent's brief, beyond a mention in one sentence that does not discuss *Dry Creek*'s analysis of the notice requirements.

21

from before or during the alleged 2017–2020 damages period: a June 1, 2011 letter; a June 9, 2014 letter; a July 1, 2017 letter; an October 25, 2019 email; and an October 23, 2020 letter. Only the last of those communications strictly complied with section 17621(c). However, we conclude the other four communications substantially complied.

The 2011, 2014, and 2017 letters all informed the City that the District had adopted school impact fees and included the rates and effective dates for the fees. Those letters "advised" the City to "not issue any building permits to a developer of [*sic*] builder of new residential/commercial developments with [*sic*] the . . . District's boundaries unless and until the District has executed a Certificate of Compliance indicating that the developer has paid the [school impact fees], as applicable." None of the letters enclosed or attached any documents, but they all invited the City to contact the District "[i]f [there were] any questions or comments with respect to this matter."

Despite not enclosing the materials identified in section 17621(c), the 2011, 2014, and 2017 letters all provided information sufficient to notify the City it needed to receive certification from the District of payment of school impact fees before issuing building permits. The City did not need to receive the resolutions adopting or increasing the school impact fees, as the effective dates of those fees and the corresponding rates were included in the letters. Nor did the City need to receive a boundary map of the District, which is the only school district in the City. The City does not dispute it had actual knowledge of the school impact fees, as evidenced by it receiving certification of their payment for at least some of the building permits that it issued. As was the case in *Dry Creek*, "the [City] received notice, though not the supporting documents. The [City] apparently was not troubled by the absence of supporting documentation and proceeded to require from

22

developers certification that the fee was paid before permits would be issued" on at least 43 projects between 2017 and 2020. (*Dry Creek*, *supra*, 50 Cal.App.4th at p. 1499.) Thus, the 2011, 2014, and 2017 letters substantially complied with the notice requirements.

As for the 2019 email, it attached "the District's new certificate of compliance for developer fees." It also stated that "[e]ffective today, the [D]istrict will begin charging $7.41 cents [*sic*] for new residential development." Like the 2011, 2014, and 2017 notice letters, the 2019 email informed the City of the revised school impact fee effective date and rate. The attached certificate of compliance stated: "Payment of school impact fees to [the District] is a prerequisite to the issuance of a building permit. Pursuant to [section 17620(b)], the City/County shall not issue a building permit . . . absent a completed Certificate of Compliance from [the District]." Nothing more was required to let the City know it needed to receive certification from the District that school impact fees had been paid before issuing building permits.

We conclude the District substantially complied with the notice requirements of section 17621(c). Therefore, section 17620(b) imposed a mandatory duty on the City, within the meaning of Government Code section 815.6, to obtain the required certification before issuing building permits. (Ed. Code, § 17620, subds. (b) & (d).) There is no dispute the City breached that duty by issuing 213 building permits between 2017 and 2020 without certification that the District had been paid the school impact fees it was owed.

C.      *Unpaid Developer Fees Do Not Constitute an "Injury" Within the Meaning of Government Code Sections 815.6 and 810.8.*

A public entity's liability under Government Code "section 815.6 requires that the mandatory duty be 'designed' to protect against the

23

particular kind of injury the plaintiff suffered. The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' " (*Haggis*, *supra*, 22 Cal.4th at p. 499.) Here, in enacting the School Facilities Act, the Legislature intended for a partnership between school districts and the cities and counties to ensure school impact fees are collected to fund school facilities. That partnership failed in Calexico between 2017 and 2020. As a result, Calexico's public school students ultimately bear the harm from the District not receiving school impact fees it was owed. However, the District cannot recover the unpaid fees from the City. Under *Aubry*, *supra*, 2 Cal.4th 962, unpaid developer fees do not constitute an actionable "injury" within the meaning of Government Code sections 815.6 and 810.8. For that reason, we conclude the trial court correctly entered judgment against the District on its second cause of action for damages.

At issue in *Aubry* was the public works laws (Lab. Code, § 1720 et seq.), which impose a variety of duties on public entities awarding contracts for public works that are "designed to help ensure that workers are paid the prevailing wages" on qualifying projects. (*Aubry*, *supra*, 2 Cal.4th at p. 967.) The Division of Labor Standards Enforcement (DLSE) brought claims against a hospital district (a public entity) asserting the hospital district, "to reduce its construction costs [on a public works project], engaged in activities that 'were part of an overall scheme' to 'circumvent the public works laws.' " (*Id*. at p. 966.) The DLSE sought damages consisting of the prevailing wage shortfall and statutory penalties. (*Ibid*.) The California Supreme Court concluded DLSE's injury was "not of the type" protected by Government Claims Act and thus "Government Code section 815.6 does not authorize an

24

action against an awarding body that fails to comply with its responsibilities under the prevailing wage laws." (*Id.* at p. 968.)

The *Aubry* court noted that for the purposes of Government Code section 815.6, "injury is defined as 'death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, *of such nature that it would be actionable if inflicted by a private person*.' (Gov. Code, § 810.8, italics added.)" (*Aubry, supra,* 2 Cal.4th at p. 968.) The Court then quoted California Law Revision Commission comment to Government Code section 810.8's definition of "injury," which states that " '[t]he purpose of the definition is to make clear that public entities and public employees may be held liable *only* for injuries to the kind of interests that have been protected in the courts *in actions between private persons*.' (Cal. Law Revision Com. com., Deering's Ann.Gov.Code, § 810.8 (1982 ed.) p. 125, italics added.)" (*Aubry,* at p. 968.) Because the DLSE alleged that as a result of the hospital district's breach of mandatory duties, "workers were paid less than the prevailing wage *while engaged on a public work*," the Court concluded "[t]his is an injury that could not exist in an action between private persons, and so it is outside the scope of the [Government] Claims Act." (*Id.* at pp. 968, 969; see *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 867–868 [concluding a county's "failure to comply with its statutory duty to correctly allocate and distribute tax revenue to other public entities does not constitute an 'injury' within the narrow meaning of [Government Code section] 810.8" because the "wrong plaintiffs complain of 'is one which by its very nature could not exist in an action between private persons' "].)

The *Aubry* court explained the allegedly deficient wages and claim for statutory penalties at issue were "predicated on the involvement of a public

25

entity in the transaction." (*Aubry*, *supra*, 2 Cal.4th at p. 970.) And "if the defendant awarding body were not a public entity, no liability for the [deficient wages or] the penalties would ever arise." (*Ibid.*) Stated another way, "if the defendant awarding body were not a public entity, there would be no injury." (*Id.* at pp. 968, 970). Thus, if the hospital district had not been involved, the prevailing wage laws would not have been triggered and there would be no injury. This necessity of government involvement took the injury outside of the scope of Government Code sections 815.6 and 810.8. (*Id.* at pp. 968–969.)

*Aubry* compels the conclusion that the City cannot be held liable for such an injury under Government Code section 815.6. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) The District has failed to identify *a private party* that could sue Calexico property owners and developers for unpaid school impact fees. It is not enough that the District or the City could sue those private property owners and developers. There is no private person that could *bring* such a suit. School impact fees are an entirely government creation. School districts set them by resolution. Cities and counties are required to enforce them by withholding building permits until such fees are paid. As in *Aubry*, without government involvement, no liability to pay such fees would ever arise on the part of private property owners and developers. Accordingly, the District has not suffered an actionable injury that would allow a claim for damages under Government Code section 815.6.[11]

---

[11] Although we are bound by *Aubry* to reach this conclusion, we note both the majority and dissent in *Aubry* quoted the Commission's comment on Government Code section 810.8's definition of injury without much analysis. (*Aubry*, *supra*, 2 Cal.4th at pp. 968, 974.) That comment seems to be in tension with the plain language of Government Code section 810.8, which

The District attempts to rely on the statement in *City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1480 that "the dispute is over the amount of a fee charged by the county, a type of dispute that arguably could arise between private parties." But *Clovis* was explicit that it was *not* in the context of the Government Claims Act and therefore was distinguishable from the construction of "injury" in the context of Government Code section 815.6. (*Clovis*, at pp. 1479–1480.) Moreover, *Clovis* did not address school impact fees. (*Id.* at p. 1473.) *Clovis* does not support the District's claim that such fees could be subject to a dispute between private parties.

Rather, *N.V. Heathorn, Inc. v. County of San Mateo* (2005) 126 Cal.App.4th 1526, 1529 is instructive. There, an unpaid subcontractor on a public project had sued the public entity for damages under Government Code section 815.6 for failing to obtain a payment bond from the general contractor, as required by statute. The Court of Appeal concluded the injury suffered by the unpaid subcontractor fell within the meaning of Government Code section 810.8, as construed by *Aubry*. (*Heathorn*, at p. 1536.) It based this conclusion on the fact that the payment bond required by statute was the equivalent of a mechanics lien, which can be enforced in actions between private persons. (*Ibid.*) In contrast here, the District has failed to identify an equivalent to school impact fees that could be enforced in an action between private persons. Nor are we aware of any such equivalent.

---

requires the injury to be "of such nature that it would be actionable if *inflicted* by a private person." (Italics added.) The statutory language focuses on the identity of the party inflicting the injury and says nothing about the identity of the injured party. In an appropriate case, the California Supreme Court may want to revisit its holding in *Aubry* to address the tension between the Commission's comment and the statutory language.

The District and amicus curiae Coalition for Adequate School Housing (Amicus) argue that not allowing the District to recover damages from the City under Government Code section 815.6 would effectively sanction the violation of section 17620(b).  As we have discussed, we are constrained by *Aubry*.  Moreover, school districts may apply for a writ of mandate (just as the District did here) to direct a city or county to comply with its duty and to seek damages for past violations.  (Code Civ. Proc., §§ 1085, subd. (a), 1095.)  Although the trial court found the District's application moot, to the extent a cycle of violations is followed by temporary compliance, courts may issue a prospective writ of mandate on the grounds that the certification of payment of school impact fees "involves a question of broad public interest, which is likely to recur between the same parties."  (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 742 (*Honig*).)

The District and Amicus also argue that not holding the City liable under Government Code section 815.6 would leave the District without compensation for past violations of the requirement to pay school impact fees.  But the District may still sue the property owners that failed to pay the required fees.  Indeed, the City, as part of this case, filed a cross-complaint to recover the unpaid fees from the property owners in the event the City was held liable.  The District may bring a similar complaint.  As the Commission noted, if there is some private person liable for the injury, "it is better public policy to leave the injured person to his remedy against the person actually causing the injury than it is to impose an additional liability on the government for negligently failing to prevent the injury."  (Cal. Law Revision Commission, Recommendation Relating to Sovereign Immunity, Number 1— Tort Liability of Public Entities and Public Employees (Jan. 1963), pp. 817– 818.)

28

## II.

### *First Cause of Action for Writ of Mandate*

The District contends the trial court erred in finding its request for writ of mandate moot. The District sought a writ of mandate that would include prospective relief (i.e., directing the City to comply with section 17621(b)) and retrospective relief (i.e., directing the City to pay school impact fees that would have been paid but for the City's noncompliance with its statutory duty). We conclude substantial evidence supported the court's finding.

A writ of mandate "may be issued . . . to compel the performance of an act which the law specifically enjoins." (Code Civ. Proc., § 1085, subd. (a).) It "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (*Id.*, § 1086.) "If judgment be given for the applicant [for writ of mandate], the applicant may recover the damages which the appellant has sustained[.]" (*Id.*, § 1095.) If the evidence demonstrates that the subject of a requested writ of mandate has a " 'willingness to perform without coercion, the writ [of mandate] may be denied as unnecessary; and if [it] shows actual compliance, the proceeding will be dismissed as moot.' " (*Honig, supra*, 13 Cal.App.4th at p. 742, first alteration in original.) "No purpose would be served in directing the [subject] to do what has already been done." (*Ibid.*)

We review a trial court's ruling on a request for writ of mandate for " ' "substantial, credible and competent evidence." ' " (*Evans v. Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407.) In doing so, "we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.)

Substantial evidence supported the trial court's denial of the City's request for prospective relief. The City submitted the declaration of Lisa Tylenda, the Director of the Development Services Department for the City. Tylenda testified that since she began working for the City in August 2021, she had "worked diligently to ensure that the City is in full compliance with its obligation to obtain the requisite certification from the District before issuing building permits pursuant to Education Code section 17620, subdivision (b)." She also testified she was "unaware of any noncompliance . . . regarding any building permits issued by the City since [her] arrival in August 2021, let alone any allegations thereof." In contrast, the District points to no evidence showing the City is not currently in compliance with its obligations under section 17620(b). Indeed, the District's counsel acknowledged during the hearing that "[t]he evidence in the record, based on the declaration of Ms. Tylenda, is that they're currently . . . in compliance." Thus, substantial evidence supported the City's actual compliance with section 17620(b). The trial court did not err in denying as moot the District's request for a prospective writ of mandate. (*Honig, supra,* 13 Cal.App.4th at p. 742.)

The District contends an exception to mootness applies in this instance because the City is likely to violate its duty under section 17620(b), again. The exception applies "when a pending case involves a question of broad public interest which is likely to recur between the same parties or others." (*Honig, supra,* 13 Cal.App.4th at p. 742.) The District bases its argument for recurrence on alleged noncompliance by the City "for years . . . since 2020." But, as we have already explained, substantial evidence supports the City's continued compliance since at least August 2021. The District offers no evidence of recurring noncompliance by the City between 2020 and August

2021.  Nor does the District present any evidence in support of this issue being likely to recur between any other parties.  Our research has not revealed any other instance in which a school district sued a city or county for issuing building permits without certification of payment of school impact fees.  Accordingly, substantial evidence supported the trial court's implicit rejection of the District's argument for an exception to mootness.

As for the requested retrospective relief, it requires that "judgment be given for the applicant."  (Code Civ. Proc., § 1095.)  Courts have construed this to mean that an applicant for writ of mandate must successfully obtain prospective relief before retrospective damages may be awarded.  (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 612 ["It is proper to award 'a money judgment in a *mandamus . . .* proceeding *where other grounds for the issuance of a writ of mandate exist.*' "]; *Oracle v. Santa Cruz County Planning Dept.* (N.D. Cal. May 15, 2009, No. C 09-373 JF (PVT)) 2009 WL 1371461, at p. 5, fn. 3 ["Where there is nothing to mandate, mandamus claims are moot, and there can be no mandamus judgment. Plaintiffs' suggestion that damages may be recovered through a mandamus claim that is moot amounts to transparent bootstrapping."].)  Here, substantial evidence supported the trial court's denial of a prospective writ of mandate.  As a result, the District may not receive damages under Code of Civil Procedure section 1095.

## III.

### *Third Cause of Action for Declaratory Relief*

The District acknowledges the trial court implicitly ruled against its cause of action for declaratory relief.  However, it contends the court erred by not issuing an explicit statement confirming the parties' respective rights.  The District misconstrues the authority on which it relies.  *Savient*

*Pharmaceuticals, Inc. v. Department of Health Services* (2007) 146 Cal.App.4th 1457, 1464 says nothing about an implicit declaration of the parties' rights being insufficient to dispose of a cause of action for declaratory relief.  Moreover, even if *Savient* had deemed an implicit declaration insufficient, it held that this "procedural point, of itself, provides no basis for reversal." (*Ibid.*)  As we have already explained at length the respective rights of the parties under the statutes applicable to school impact fees, we see no reason to provide an additional, duplicative statement under the District's cause of action for declaratory relief.  The trial court did not commit reversible error in implicitly ruling against the District on this cause of action.

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.

DO, J.

WE CONCUR:

DATO, Acting P. J.

BUCHANAN, J.